IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-03358-CMA-BNB

C.S., an unemancipated person, through his parents and next friend, Michael and Cynthia
Schaffer,

Plaintiff,

v.

PLATTE CANYON SCHOOL DISTRICT NO. 1,
MIKE SCHMIDT, and
MEGGIN STOUT,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on the defendants' **Motion to Dismiss for Lack of Subject Matter
Jurisdiction** [Doc. #31, filed 09/19/2013] (the "Motion").  I respectfully RECOMMEND that
the Motion be DENIED.

## BACKGROUND

The plaintiff, C.S., is a former Platte Canyon High School special education student.
Through his parents, C.S. filed a Complaint and Jury Demand on December 28, 2012 [Doc. #1]
(the "Complaint").  The Complaint asserts claims under the Fourth Amendment, Due Process
Clause, Rehabilitation Act, Americans with Disabilities Act, and state tort law.  The plaintiff
claims that the defendants abused him and discriminated against him.  The defendants argue that
the court lacks subject matter jurisdiction over the claims because the plaintiff failed to exhaust
his administrative remedies pursuant to the Individuals with Disabilities Education Act
("IDEA"), 20 U.S.C. § 1400 *et seq*., prior to bringing this action.

**THE IDEA**

IDEA was enacted to assist state and local agencies to provide education for children with disabilities and "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d).

States receiving federal assistance must create an individualized education program ("IEP") for each disabled child. Id. at § 1412(a)(4). An IEP is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance" with IDEA and that includes (1) the child's present performance level, (2) the goals to be attained, (3) a description of how and when the goals will be measured, (4) the specific educational services to be provided, (5) an explanation of the extent to which the child will not participate with nondisabled children, (6) any accommodations that are necessary to measure academic achievement and functional performance, and (7) goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills and the transition services necessary to reach the goals. 20 U.S.C. § 1414(d)(1)(A). IDEA further requires that disabled children be educated in the "least restrictive environment":

> To the maximum extent appropriate, children with disabilities . . .
> are educated with children who are not disabled, and special
> classes, separate schooling, or other removal of children with
> disabilities from the regular educational environment occurs only
> when the nature or severity of the disability of a child is such that
> education in regular classes with the use of supplementary aids and
> services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A).

Parents may "present" a complaint challenging "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." The filing of a complaint gives rise to a resolution process, followed by a due process hearing, which is conducted in compliance with state procedures. 20 U.S.C. § 1415(b)(6) and (f).

IDEA requires that its remedies be exhausted prior to filing a civil action pursuant to other federal laws:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], Title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

## SUBJECT MATTER JURISDICTION

The defendants assert that the court lacks subject matter jurisdiction over the plaintiff's claims because he failed to initiate a due process hearing pursuant to IDEA before filing this civil action. In Muskrat v. Deer Creek Public Schools, the Tenth Circuit Court of Appeals "pause[d] to consider whether [its] prior case law correctly treats IDEA exhaustion as a jurisdictional matter." 715 F.3d 775, 783 (10th Cir. 2013). In doing so, the court stated:

> The trend is toward greater precision in jurisdictional analysis. Toward this end, the Supreme Court recently admonished the federal courts to employ the "jurisdictional" label carefully given the important differences between jurisdictional and non-jurisdictional requirements. We are to avoid "drive-by

jurisdictional rulings," Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 91, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), that fail to consider the careful balance between non-waivable subject matter jurisdiction requirements and waivable "claim processing" provisions that do not invoke our subject matter jurisdiction, Henderson v. Shinseki, ––– U.S. ––––, 131 S.Ct. 1197, 1203, 179 L.Ed.2d 159 (2011); cf. Pub. Serv. Co. of N.M. v. NLRB, 692 F.3d 1068, 1076 (10th Cir. 2012) ("[W]e must be wary about the word 'jurisdiction.' ... [T]he Supreme Court has repeatedly warned lower courts against confusing 'claim-processing rules or elements of a cause of action' with true 'jurisdictional limitations.' "). Although  "[c]ourts do not usually raise claims or arguments on their own ... they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  Henderson, 131 S.Ct. at 1202.  Further, a party may challenge subject matter jurisdiction at any time, even on appeal after losing below.  Id.  By contrast, a party may waive or forfeit the benefit of a nonjurisdictional rule. Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 203 (2d Cir. 2007).

Other circuits have split on whether IDEA exhaustion is jurisdictional.  Most of these decisions appear to be the sort of drive-by rulings that the Supreme Court has cautioned against. Thus, for example, aligning with our own previous statements about IDEA exhaustion, the Second and Fourth Circuits have simply assumed without analysis that IDEA exhaustion is jurisdictional and proceeded on that basis.  See Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir. 2002) (stating without analysis that "[a] plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction"); MM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 536 (4th Cir. 2002) (stating without analysis that "[t]he failure of the [plaintiffs] to exhaust their administrative remedies for [certain IDEA-related claims] deprives us of subject matter jurisdiction over those claims").

Most contrary decisions are no more thorough.  The Seventh Circuit, for instance, deemed IDEA exhaustion nonjurisdictional by stating simply, "A failure to exhaust is normally considered to be an affirmative defense, and we see no reason to treat it differently here."  Mosely v. Bd. of Educ. of City of Chicago, 434 F.3d 527, 533 (7th Cir. 2006) (citation omitted).  The Eleventh Circuit has similarly rejected jurisdictional status by briefly mentioning the availability of exceptions like futility and

> inadequacy of remedy.  N.B. v. Alachua Cnty. Sch. Bd., 84 F.3d
> 1376, 1379 (11th Cir. 1996).
>
> It appears that only the Ninth Circuit has evaluated the question at
> any length.  Payne v. Peninsula Sch. Dist., 653 F.3d 863, 867–71
> (9th Cir. 2011) (en banc).  In concluding that IDEA exhaustion is
> not jurisdictional, the Ninth Circuit found it primarily noteworthy
> that the statutory language relating to exhaustion does not cast
> itself in jurisdictional terms.  Id. at 896–70.  The court further
> noted that, as a matter of policy, deeming IDEA exhaustion
> jurisdictional was unwise because it "is not a check-the-box kind
> of exercise" and its "inexact" nature could "haunt the entire
> proceeding, including any appeals" if treated as jurisdictional.  Id.
> at 870.  There is much to be said for these conclusions.

Id. at 783-84.

Although the Tenth Circuit did not decide in Muskrat whether IDEA exhaustion is

jurisdictional, it cited favorably to Payne and clearly questioned whether its previous treatment

of IDEA exhaustion as a jurisdictional matter "is legally correct."  Id. at 783.

In Payne, the Ninth Circuit found instructive the analysis employed by the Supreme

Court in Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010):

> In Reed Elsevier, the Court examined a provision of the Copyright
> Act providing that copyright holders must register their works
> before bringing suit for copyright infringement.  Section 41(a) of
> the Copyright Act provides that "no civil action for infringement
> of the copyright in any United States work shall be instituted until
> preregistration or registration of the copyright claim has been
> made in accordance with this title."  17 U.S.C. § 411(a).  Holding
> that § 411(a) is not jurisdictional, the Court pointed to three
> factors.  First, the Court pointed out that § 411(a) does not "
> 'clearly state [ ]' that its registration requirement is
> 'jurisdictional.'"  Reed Elsevier, 130 S.Ct. at 1245 (quoting
> Arbaugh, 546 U.S. at 515, 126 S.Ct. 1235).  Second, the Court
> noted that § 411(a) was separate from other statutes that grant
> subject matter jurisdiction and that neither 28 U.S.C. § 1331 nor 28
> U.S.C. § 1338—which is specific to copyright—mentions the
> registration requirement.  Id. at 1245–46.  Finally, the Court could
> not find "any other factor [that] suggest[s] that 17 U.S.C. §

> 411(a)'s registration requirement can be read to 'speak in
> jurisdictional terms or refer in any way to the jurisdiction of the
> district courts.'" Id. at 1246 (quoting Arbaugh, 546 U.S. at 515,
> 126 S.Ct. 1235); see also Henderson, 131 S.Ct. at 1202–07
> (reaffirming and applying Reed Elsevier 's methodology).

Payne, 653 F.3d at 868-69 (*overruled on other grounds* by Albino v. Baca, ___ F.3d ___, No.

10-55702, 2014 WL 1317141 (9th Cir. April 2, 2014).

The Ninth Circuit applied the Reed Elsevier analysis to IDEA's exhaustion requirement.

The court found that section 1415 does not contain any language regarding the jurisdiction of

federal courts:

> First, we observe that nothing in § 1415 mentions the jurisdiction
> of the federal courts.  In fact, neither the word "courts" nor the
> word "jurisdiction" appears in § 1415( 1 ).  Section 1415 is written
> as a restriction on the rights of plaintiffs to bring suit, rather than
> as a limitation on the power of the federal courts to hear the suit.
> That textual choice strongly suggests that the restriction may be
> enforced by defendants but that the exhaustion requirement may be
> waived or forfeited.

Id. at 869.

Next, the court looked to relevant jurisdictional statutes:

> Second, nothing in the relevant jurisdictional statutes requires
> exhaustion under the IDEA.  Section 1415( 1 ) provides that if the
> plaintiff is "seeking relief that is also available under [the IDEA],
> the procedures under [20 U.S.C. § 1415(f), (g)] shall be exhausted
> to the same extent as would be required had the action been
> brought under this subchapter."  Section 1415(i) describes the
> actions that can be brought under the IDEA.  A party who is
> "aggrieved by the findings and decision" made under the IDEA's
> procedures has "the right to bring a civil action ... in any State
> court of competent jurisdiction or in a district court of the United
> States, without regard to the amount in controversy."  20 U.S.C. §
> 1415(i)(2)(A).  There is no restriction in this section on the subject
> matter jurisdiction of the federal courts.  The only provision that
> arguably affects federal subject matter jurisdiction is the provision
> specifying that there is no amount-in-controversy requirement, and

it appears to expand, rather than contract, federal jurisdiction. More to the point, the section expressly provides that suit may be brought in state or federal courts.  As state courts are courts of general subject matter jurisdiction, it is hard to think that Congress would permit IDEA suits to be brought in state court but at the same time restrict the subject matter jurisdiction of the federal courts.  Without clearer instruction from Congress, we are reluctant to infer such a restriction where Congress has not made it explicit.  See Henderson, 131 S.Ct. at 1203 ("[Courts should] look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.' ").

Id. at 870.

Finally, the court stated that it could not find any no reason why section 1415(l) should

be read to make exhaustion a prerequisite to the exercise of subject matter jurisdiction, and found

many reason why it should not:

> [T]he exhaustion requirement in § 1415( l ) is not a check-the-box kind of exercise.  As our cases demonstrate, determining what has and what has not been exhausted under the IDEA's procedures may prove an inexact science.  See Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1302–03 (9th Cir.1992) (noting that the IDEA's exhaustion requirement "is not a rigid one, and is subject to certain exceptions," determined by "the general purposes of exhaustion and the congressional intent behind the administrative scheme").  In other words, the exhaustion requirement appears more flexible than a rigid jurisdictional limitation—questions about whether administrative proceedings would be futile, or whether dismissal of a suit would be consistent with the "general purposes" of exhaustion, are better addressed through a fact-specific assessment of the affirmative defense than through an inquiry about whether the court has the power to decide the case at all.  If we were to hold that exhaustion was jurisdictional, the question of exhaustion *vel non* would haunt the entire proceeding, including any appeals.  We would have the obligation to raise the issue *sua sponte*, a particularly frustrating exercise for parties and courts when Congress has authorized the parties to file suit in state court in the first place.  Congress may, of course, override our concerns and make the IDEA's exhaustion requirement jurisdictional, but we would need a clearer statement of its intent before we will impose such a requirement.

7

Id.

I find the reasoning and conclusion of the Ninth Circuit persuasive.  In light of the

Supreme Court's repeated warnings against confusing true jurisdictional limitations with "claim

-processing rules," and the Tenth Circuit's query regarding its prior cases and its favorable

citation to Payne, I conclude that IDEA's exhaustion requirement is not jurisdictional.

The defendants argue that "[a]bsent *en banc* reconsideration by the Tenth Circuit or a

superseding Supreme Court decision, existing circuit precedent is binding" on the issue of

whether IDEA's exhaustion requirement is jurisdictional.  *Motion*, p. 9, n. 14.  However, this

court has recently recognized that "[t]he Supreme Court and the Tenth Circuit have instructed

that drive-by jurisdictional rulings are devoid of precedential effect, regardless of whether they

have been explicitly abrogated by later precedent."  River North Properties, LLC v. City and

County of Denver, Civil Action No. 13-cv-01410-CMA-CBS, 2014 WL 1247813 at *6 (D.Colo.

March 26, 2014) (citing Reed Elsevier, 559 U.S. at 161; Hobby Lobby Stores, Inc. v. Sebelius,

723 F.3d 1114, 1159 (10th Cir. 2013) (noting that courts can disregard prior opinions, even from

the Tenth Circuit, that invoke the term "jurisdictional" with little or no analysis because they are

"exactly the sort of 'drive-by jurisdictional rulings' the [Supreme] Court tells us to view with a

jaundiced eye"), *cert. granted on other grounds*, 134 S.Ct. 678 (2013)).

Because I find that failure to exhaust the administrative remedies available under IDEA

is not jurisdictional, I construe the defendants' Motion as a motion for judgment on the pleadings

pursuant to Fed.R.Civ.P. 12(c).[1]  In ruling on a motion to dismiss for judgment on the pleadings,

---

[1]The defendants filed Defendants' Answer and Jury Demand on March 5, 2013 [Doc. #12] (the "Answer").  The Answer asserts the defense of failure to exhaust IDEA's administrative remedies.  *Answer*, p. 28.

I may treat the motion as a Rule 56 summary judgment motion when matters outside the

pleadings are presented to and not excluded by me, and all parties have been given a reasonable

opportunity to respond as provided in Rule 56.  Fed. R. Civ. P. 12(d).  Both parties have

submitted supporting documents with their briefs and rely on the evidence to support their

factual statements.  I find that the parties have been given reasonable opportunity to brief the

matter as a summary judgment motion.  I have considered the parties' exhibits in my

determination of this matter.  I shall, therefore, treat the defendants' Motion as a Rule 56 motion

for summary judgment.

In ruling on a motion for summary judgment, the facts must be viewed in the light most

favorable to the party opposing the motion, and that party must be afforded the benefit of all

reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S.

144, 157 (1970).  Summary judgment shall be rendered "if the movant shows that there is no

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of

pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine

issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The moving party

may carry its initial burden either by producing affirmative evidence negating an essential

element of the nonmoving party's claim, or by showing that the nonmoving party does not have

enough evidence to carry its burden of persuasion at trial."  Trainor v. Apollo Metal Specialties,

Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate

evidence of specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at

324.  Only admissible evidence may be considered when ruling on a motion for summary

judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

**FAILURE TO EXHAUST THE IDEA'S ADMINISTRATIVE REMEDIES**

The following material facts are not disputed by the parties:

1.  At all times pertinent to the allegations of the Complaint, plaintiff C.S. was enrolled

as a student at Platte Canyon High School.  *Complaint*, ¶ 10.

2.  C.S. is an individual with disabilities within the meaning of IDEA.      Id.; *Motion*, p.

2.

3.  The plaintiff's special education teacher was defendant Meggin Stout.  *Complaint*, ¶

16; *Motion*, p. 3.

4.  The plaintiff's mother states that she was made aware by school district employees

that Ms. Stout had verbally and physically abused C.S.  *Plaintiff's Response to Motion to*

*Dismiss for Lack of Subject Matter Jurisdiction* [Doc. #43] (the "Response"), Ex. 2, 51:3-13,

53:3-19.

5.  C.S.'s parents requested an IEP meeting with the School District to discuss concerns

about C.S.'s placement in a transition program and their complaints about Ms. Stout's conduct.

They were told by the principal, defendant Mike Schmidt, that an IEP meeting was not the

appropriate forum for complaints against employees, and that "[o]ne wishing to file a complaint

against an employee must do so in writing" pursuant to District Policy 703, which provides the

procedure for making complaints against school employees. *Response*, Ex. 8 78:20-79:13; Ex. 9.

6. C.S.'s mother filed a complaint for physical and verbal abuse by Ms. Stout pursuant to District Policy 703. The School District investigated complaint and issued a decision denying the claims. C.S.'s mother appealed the decision to the Platte Canyon Board of Education and requested a hearing. The Board of Education summarily affirmed the School District's decision and denied the request for a hearing. The process set forth in District Policy 703 was fully exhausted. Id. at Exs. 10-13.

The plaintiff does not dispute that he did not exhaust the IDEA's available remedies with regard to the claims he brings in this lawsuit. *Complaint*, ¶ 92. However, he claims that he exhausted all remedies available to him. *Response*, pp. 14-15.

Exhaustion of the remedies available in IDEA is not required if requesting a due process hearing would be futile. Muskrat, 715 F.3d at 786. In Muskrat, the Tenth Circuit found that the plaintiffs were not required to exhaust administrative remedies under IDEA because it would have been futile:

> Although the Muskrats did not formally request a due process hearing under the IDEA, they nonetheless worked through administrative channels to obtain the relief they sought, namely, preventing J.M. from being put in a timeout room in the future. They made written and oral demands to school administrators not to place J.M. in timeout. See, e.g., App. 673 (affidavit of Mrs. Muskrat stating that she orally requested in January 2005 that the school no longer place J.M. in timeout); App. 677–78 (Nov. 17, 2005 letter from Mrs. Muskrat to school officials listing various items for an upcoming IEP review, including that "we do not want [J.M.] being put in time out"). The interested parties—J.M.'s parents and the school staff responsible for administering his IEP—then conferred, and the IEP was modified as a result. See, e.g., App. 720 (affidavit of J.M.'s in-school physical therapist stating that school staff met with Mrs. Muskrat in late November 2005 and agreed not to subject J.M. to the timeout room); App.

> 699 (Aug. 10, 2006 IEP review form stating that J.M. will no longer be placed in timeout).
>
> At this point, given the steps the Muskrats took and the relief they obtained, it would have been futile to then force them to request a formal due process hearing—which in any event cannot award damages—simply to preserve their damages claim. See Hayes, 877 F.2d at 814 (stating in the context of the IDEA's predecessor statute that "exhaustion of administrative remedies is not required if adequate relief is not reasonably available or pursuit of such relief would be futile").

Id.

Here, C.S.'s parents worked through all of the administrative channels made available to them by Mr. Schmidt. Mr. Schmidt made it clear that relief for the complaints against Ms. Stout was not available under the IDEA; relief was available only under the district's policy for parent complaints against school employees. Mr. Schmidt told C.S.'s parents that their complaints against Ms. Stout had to be made pursuant to District Policy 703, and C.S.'s parents exhausted all of the remedies available under District Policy 703. Under these circumstances, pursuit of a due process hearing would have been futile.

In addition, the IDEA does not impose an obligation to exhaust physical abuse claims. Id. at 785. "No authority holds that Congress meant to funnel isolated incidents of common law torts into the IDEA exhaustion regime." Id.

I respectfully RECOMMEND that the defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. #31] be DENIED.[2]

---

[2]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key

Dated May 19, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).